Good morning, Your Honor. My name is Vincent Aiken Wake. I represent the appellant in this appeal. This is an appeal from the decision of the United States District of Southern District, which granted a summary judgment to the defendants. Appellant was employed by New York Methodist Hospital as a chaplain. When he was employed as a chaplain to perform what I let me call ecclesiastical services and counseling services? Not necessarily, Your Honor. So what do chaplains do that doesn't have a religious component to them? They provide spiritual counseling. Spiritual, doesn't that implicate some form of religion? No, not in the context in which the appellant was employed. Pretty much every hospital around has a chaplain department, both secular hospitals. The entity that has a chaplain program, it's non-religious. The appellant did not need to be an ordained minister to perform his duties. All he needed was four units of a CPE, that's clinical pastoral education, Your Honor. I know the director of the office was Greek Orthodox, right? Mr. Poulos? Mr. Poulos, remember that? Yes, Your Honor. He's Greek Orthodox, right? Is this just an odd circumstance? Because I know that that office had chaplains of all different backgrounds. There were Jewish chaplains, there was a Muslim priest, there was Poulos, but he's Methodist. Does that make any difference? It doesn't make any difference, Your Honor. He was not employed as a Methodist. He was employed because he had four units of CPE, Your Honor. But were there any particular Methodist-type responsibilities he had because he was a Methodist chaplain in the hospital? In other words, were there training for the Methodist chaplains that was different from and more specific to the Methodist faith than the Jewish or Greek Orthodox or Muslim people who worked in the office? No, Your Honor. No, Your Honor. He counseled both would also perform, even Jewish, Muslim, Seventh-day Adventists, and so on. I thought that he would, like, when someone specifically asked, I want to receive communion, he'd say, oh, I got to get a Catholic priest. I'll put a request in for a Catholic priest. Isn't that the way it worked when there was something that was particular to the patient's religion, right? Yes, Your Honor, in this context with respect to Methodist church, that pertained to Catholics, not to Methodists. No, not to Methodists. There was nothing specific about his duties. I mean, he performed the same duties that other chaplains would perform. But I wonder, I have a different point, maybe it's the same point that Judge Droney is raising, is that the functions were fundamentally religious functions, and that the chaplain's office operated in such a way that it dealt with religious functions, and they had patients who were Catholic or Jewish or Protestant, and so they made sure that there were people there to serve their particular faiths. Is that right? I don't know that I will say that it was fundamentally religious, because the entity that accredited that office was not religious. And chaplains did not have to be religious in the position. All they needed was to obtain four credits of clinical pastoral education. But isn't that religious? That is religious education. And indeed, they need that religious education in order to carry out religious duties. Some of them, yes, Your Honor, because of the patients who were admitted to the hospital, but not because of the functions of the office. But what about administering communion and things? Well, those were religious duties, Your Honor. He had to be qualified to do that for those of the Methodist faith or other ecumenical sects that would receive communion from a Methodist pastor, right? No, Your Honor. All he had to do was obtain four units of clinical pastoral education. So could I go there and become a chaplain? Sorry, Your Honor. Could I go there, take the course, and become in the chaplain program? Yes, Your Honor, if you obtain four units of CPE and a master's degree in philosophy, I believe. Is this hospital any different than a completely secular hospital? I know there's still some vestiges of the Methodist church in the bylaws, in the board, in the charter. I know there's been a big dispute about how much there is to that. But if it's clearly a New York City hospital without any religious affiliation, did it come up that they have a chaplains group, too, in those hospitals? Yeah, all those hospitals. Even Bayview here, which is owned by the New York City, has a chaplain. Other New York City hospitals that are pervasively secular also have chaplain departments and CPE programs. But the primary issue before the district court, based on the summary judgment issue, was whether or not New York Methodist Hospital was a religious organization. But the district court did not make any finding as to whether or not the hospital had a substantial religious character, which was what the Supreme Court had laid down in the case of Lemon v. Gutzman. Can I just ask you a procedural question, too? I know there was a motion to dismiss initially ruled on by the district court, where the district court said, I can't decide the issue of whether it's a religious entity, Methodist Hospital. So we'll leave that for summary judgment. But it did rule on the minister aspect of this. He's a minister. So are we able to revisit that issue? Was that part of the summary judgment, then, his status and what he did, other than just the issue of whether Methodist Hospital is a religious organization? I don't know that this court can revisit the issue of whether or not the appellant was a minister. But in order for ministerial exception to apply, the hospital had to be a religious organization. And then the employee had to be a minister. But in this case, the court had ruled in the motion to dismiss contact that the plaintiff is a minister. Are you stuck with that, then? See, my question is, in other words, even if we were to find the Methodist Hospital is a religious organization, I'm not saying that we are, but there's still another question about his duties. I mean, it's possible that he wasn't performing duties of a religious nature. Are we able to look at that? I believe this court can, Your Honor, because as I indicated earlier, he did not have to be a minister in order to hold that position, in order to be a chaplain. Thank you. You've reserved three minutes for rebuttal. May it please the Court. This case presents the Court with the opportunity to consider the interplay of Hosanna-Tabor with this circuit's prior precedents, Rehamamu and Hankins v. Light. Two points are clear, and each independently compels affirmance of the district court's order based on the ministerial exception. First, even prior to Hosanna-Tabor, Rehamamu and Hankins compel affirmance of the district court's order because the Court cannot resolve Reverend Penn's claims without examining whether the hospital's position that had terminated Reverend Penn for failure to properly perform the religious duties of his position were pretextual. As Rehamamu and Hankins show— That's the point, right? I mean, the cases seem to be consistent that there has to be competing religious views that we have to stay away from. We can't get into orthodoxy. We can't decide what the rules of the Methodist Church, whether they were right, whether they were applied correctly. What about his termination of the incidents implicate that, where you have to bump up against Methodist doxology of some kind? Where is that? It seems like he was negligent in putting slips in. He was not calling the right type of priest to come in. He was offensive to a couple that just had a miscarriage. But where is it that we have to stay away because we've got to decide some Methodist Church issue? Where is that? So I think there's a legal response and a factual response. From a legal perspective, I believe under Hosanna-Tabor, if the two elements, i.e. a religious organization and a ministerial function, are satisfied, there need not be a religious reason for— But that was a ministerial function in a particular church. That was a church school with one—I think it was Lutheran, maybe. Is that right? I think that's right. But here you've got a chaplaincy department that's got Jewish members, Catholic members, Protestant members, Muslim members. Is that different? It is not different. And the reason it is not different is, I believe, it is error to conflate religious with sectarian or denominational. In other words, religious functions deal with—the district court, I think, correctly noted that it perceives little or no difference between religious and spiritual. And if a pastoral care, for example, is a religious function, and if a chaplain is improperly performing his pastoral or her pastoral care duties, that chaplain is failing in a religious function. Would you be making the same argument if what the appellant here had engaged in was assault or what was perceived to be an assault on a patient? So, Your Honor, that is sort of an issue that is— Certainly non-pastoral, I would suggest. That is an issue— Probably a violation of the tenets of Methodism. Methodism, yes. Methodism, yes. Thank you. Yes. And that is where the Court is taking me now is down the, quote, unquote, parade of horribles that the Supreme Court and Hosanna Tabor decided was best left for another day. I would argue that the supposition in Your Honor's question is correct, that by engaging in behavior that is incongruous, shall we say, with a chaplain's performance of the religious duties of his position, that that would then become a First Amendment-protected reason for terminating the appellant's employment. But I would agree that—or I would state that the Supreme Court holds that issue open in Hosanna Tabor. We move any direction in this case down toward, you know, toward approaching the parade of horribles? Not very horrible, but— I don't think we're close to that in this case. What if he had been Jewish? What if he was a member of the chaplaincy and was Jewish and he ministered to everybody, but when there was a particular Jewish patient that wanted that, you know, some kind of particularized attention, would you still be here if he were Jewish? How would his connection to the Methodist Church matter? I would. And I understand that the district court left that issue open explicitly and expressly. I think the district court need not have been worried about that. I think the issue is whether or not—there's two separate ways in which the First Amendment is implicated here. First is simply if the two elements of Hosanna Tabor are satisfied. And I would agree that the district courts that note that these two elements are on a sliding scale and that line of cases traces back to this court's decision in Rehamamu, so that the more heavily ministerial the position, then that bears on the overall assessment as to whether the ministerial exception applies. Let me issue this. And this may be, I think, a different way of asking what Judge Droney's asking, but part of what the—maybe what the appellant's raising is that, to some extent, by clinging on to you being religiously affiliated with Methodists, but at the same time having a chaplain office that is serving all religions, to some extent, aren't you sort of undercutting the extent to which you have the religious affiliation, which creates problems for you on prong one? And so—and I think what the appellant's point is, you don't get to prong two because we're not sure we can get to prong one. And the challenges we have at prong one is based on the fact that you've got this allegedly Methodist hospital saying we have all kinds of religions, but we—you now can't challenge the decision we make because it relates back to Methodism, although it has to do with other religions. I understand your question. There's a Sixth Circuit decision from 2015 called Comlin v. Intraversity Christian Fellowship. Sorry, I don't have the site with me. And in that case, the Court expressly holds that non-denominational or multi-denominational is nonetheless religious. In other words, the District Court made the same point in a different way. The District Court refused to conflate religious with sectarian. And I think the Sixth Circuit decision in Comlin is making the same point, and I think that's one of the errors with the appellant's argument on this appeal. I would argue, however, separate and apart from the for affirmance. Even if the Court found that there was an issue as to whether the hospital were a religious institution, that was not a requirement that was expressly made in Re'emamu. Rather, the focus was on entanglement, traditional First Amendment excessive entanglement analysis, meaning that the second— It wasn't really an issue in the case, right? That was the Catholic Church in Norwich, right? And there's no question he was a Catholic priest. He even litigated his discharge in Rome. But they did. With a Catholic court in Rome, right? That is true. But for example, one of the factors that the Congregational Proclaris relied on was how Father Justinian failed to get along with his colleagues. In other words, the factors that the court in Rome looked at included factors that maybe they're religious, maybe they're not, but they don't resolve—they don't require resolution of Catholic dogma in order to address those issues. That's the error. It's not—it's whether or not the religious functions are implicated here, not whether sectarian or doctrinal issues are implicated. And that's— Let's pick a non-religious—a hospital here in the city with no religious affiliation in its charter or anything else. Same set of facts. You still have the same argument? So you're—good question. And— Thank you. Yes. And what I would distinguish, right, would be where the government is the employer. And there was the one decision that we found, Carter, where the government, because it could not be promoting or, you know, a—or establishing religion— Had a First Amendment bar. First Amendment issue, right? Worked—labored mightily in order to make sure that they did not do that. So the minister in that case testified that she was providing holistic care. Okay? Our research did not find a single case where a private entity that employed a minister or someone performing a core ministerial function, as Reverend Penn did in this case, was deemed to be anything other than a religious entity. And that makes sense when you look at Chiron and Hollins and cases that focus the question at the level of the issue before the I don't have the exact words in front of me, but in its capacity as Chiron's employer, the hospital was clearly a religious entity, even though it had clearly secular attributes to it. Because what it was providing through the pastoral program were religious. That's exactly right. And so—and it doesn't matter whether or not whatever religious services they are providing has nothing to do with the Methodism that was—has been traditionally associated with the hospital. That's exactly right. So as long as you provide any religious services, then you're then free to make employment decisions about those who are engaged in providing these religious services without fear of sanctioning the Title VII and so forth. Exactly right. Thank you. Mr. Ekenyeweke, you've reserved three minutes. Yes, Your Honor. If I may, in order for the First Amendment to be implicated, the employer had to be a religious organization. And what are you citing for that proposition? Lemon v. Kuzman, Your Honor. This goes back to Lemon? Yes, Your Honor. Because it must have a substantial religious characteristics. Although this circuit has not had the opportunity to consider what constitutes a religious organization in this context, other circuits have. And normally, they weigh the secular attributes of the employer against the religious attributes in order to determine whether or not the entity is indeed religiously affiliated. In this case, the district... We would have to... If we agreed with you, we would be creating a circuit split between us and, let's say, the Eighth Circuit? Not necessarily, Your Honor. In the Eighth Circuit... How do we not do that when, it seems to me, the import of... I'm forgetting the name of the... Hematskar Run. Sixth Circuit, I'm assuming. Conlon and Conlon, the Sixth Circuit. Right. Your Honor, St. Luke's was run by a hospital. That hospital was run under the auspices of Episcopal Church. It was owned by the church. So that was not an issue in that case, Your Honor. Here, New York Methodist Hospital is a wholly private entity without any affiliation, Your Honor. It's a religious organization. The Hematskar Run that they actually heavily relies upon... I'm curious, looking at the Articles of Incorporation, how they were amended over the years to reduce the amount of Methodist stuff in them. Was that to be able to join the Presbyterian group? Was that why? Did that come up in the depositions? Why did you keep amending your Articles of Incorporation to reduce the number of references and involvement in the Methodist Church? The hospital's position is that they did that in order for the Methodist Church to avoid litigation, not to be sued. But that was just a deposition testimony of one of the vice presidents. There was nothing to support that contention. So it wouldn't be responsible for any judgments against the hospital? Like the Methodist Church itself would not be responsible? Is that what... That's what they claim, Your Honor, but there is no evidence to support that other than that deposition testimony. Let me ask you this. One challenge I'm having with your argument, and I understand your argument about the religious affiliation, but when you get down to the question of what the particular duties are, and what, as I understand, the hospital's argument is at the end of the day, if you get involved with this type of employment decision, you're inevitably getting involved with religion. And the issues they deal with about a communion service and people being upset about the carrying out of religious services. It does seem that courts and even juries are sort of ill-equipped to be making the judgments about whether or not a minister is carrying out aspects of religious services or faith appropriately. And isn't that the essence of what the hospital is really trying to preserve here? No, Your Honor, because the chaplain would not be providing such service as a minister. That service would be provided as a chaplain who only had four units of clinical pastoral education. There is no religious issue at all involved. I mean, that argument has some surface appeal. But I guess the challenge I have is that if you're someone receiving that service, I'm And then indeed, more than you think, that you hope, given that you're in a situation where you're ill or gravely ill and certainly wanting some sort of spiritual support. So however one characterizes it, certainly the people who are receiving it have to be thinking about it as religious services, correct? Well, to the patient, the patient might feel that way, but there is evidence in the record that even the director of the program would instruct chaplains to tell patients that the hospital was not a church, that if they needed additional support, that they should call their local ministers. And it's in the record, Your Honor. The hospital knew that it wasn't providing any religious service. Except by virtue of having chaplains of a whole realm of faiths, you know, recognized throughout the world as faiths, and the hospital is providing those services. So whatever the hospital says, we're not a church, well, that's fairly obvious. But we are providing you spiritual and religious attention through the people that we hire here. Is that not a correct statement? It is, Your Honor, but so does other secular hospitals, New York City hospitals, even the Carter v. Broadlawn case. We don't have that case before us yet. Why is the district court's decision not applicable to them as well? And I think I know your answer, which is because you have to have some religious affiliation on the employer's side in order for that argument to work, and there is none here. Is that a fair statement? Yes, Your Honor. Okay. Even the U.S. Army, Your Honor, all these entities have chaplains. It doesn't mean that they are religious. There has to be something deeper in order to make the hospital a religious organization. The executive decision hinged on the fact that Episcopal Church was running the hospital. Right. Thank you. Thank you. Certainly have your argument. We have both of your arguments, so much appreciated. It's an interesting case, and we will give you a decision in due course.